```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CRYSTAL BURTON                       :     CIVIL ACTION
                                     :
         v.                          :
                                     :
THE CITY OF PHILADELPHIA,            :
et al.                               :     NO. 15-5025
```

MEMORANDUM

Bartle, J.                                        September 8, 2016

Before the court is the motion of defendant Philadelphia Police Detective Justin Montgomery ("Detective Montgomery") for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in this action under 42 U.S.C. § 1983.

Plaintiff Crystal Burton ("Burton"), the mother of A.B., originally brought this lawsuit against The City of Philadelphia, The Philadelphia Police Department, The City of Philadelphia Department of Human Services, Pasquale Mignano, Robert McGarrity ("McGarrity"), and Charles Ramsey ("Ramsey"). After the defendants moved to dismiss, Burton filed her first amended complaint naming as defendants only The City of Philadelphia, Vanessa Garrett, McGarrity, and Ramsey. The defendants again moved to dismiss. In response, the plaintiff withdrew her claims against all defendants except McGarrity. We granted McGarrity's motion to dismiss Count Six of the first

amended complaint but denied the motion of McGarrity with regard to Counts One through Five because "at this early stage" we "d[id] not have a sufficient record to decide the issue of qualified immunity."

In April 2016, pursuant to a stipulation by the parties, we entered an order dismissing Counts One, Two, Four, and Five and substituting Detective Montgomery for McGarrity. As such, the only remaining claim in this action is Count Three alleging that Detective Montgomery violated Burton's constitutional right to be free from malicious prosecution.

I.

The following facts are not in dispute. In July 2013, Burton's three-year old son, A.B., was under the care of a babysitter, who brought A.B. to a physician for asthma issues. During the visit, the physician noticed one burn injury on A.B.'s left elbow and another on his upper back. In his notes, the physician wrote "[c]hild stated that mom burned him." The physician reported the burn injuries to the Philadelphia Department of Human Services ("DHS") as required by the Child Protective Services Law, 23 Pa. Cons. Stat. § 6311. DHS subsequently notified the Philadelphia Police Department. Detective Montgomery of the Philadelphia Police Department Special Victim's Unit was randomly assigned to the case.

Thereafter, A.B. was placed in a foster home. As part of his investigation, Detective Montgomery visited A.B.'s foster home to photograph his injuries. He also obtained a search and seizure warrant for A.B.'s medical records. While conducting that search, he briefly spoke with the reporting physician. The physician told him that A.B.'s injuries were consistent with cigar or cigarette burns.

Detective Montgomery also referred A.B. for a forensic interview with the Philadelphia Children's Alliance ("Alliance"). Alliance has a team of forensic interviewers specially trained to speak with children. Detective Montgomery observed the interview from a separate room behind one-way mirrored glass. During the interview, A.B. stated that his mother had burned his arms and legs. When asked how Burton had burned him, A.B. responded "my arms and legs." A.B. told the Alliance interviewer that Burton had burned others but did not respond when asked to identify those individuals. The Alliance interviewer asked if anyone had witnessed A.B. being burned by Burton. A.B. identified "Nadine" as a witness.[1]

In its interview summary, Alliance stated that A.B. had "[p]rovide[d] information consistent with the allegations." Alliance noted that "[i]t should be considered that [A.B.] may

---

1. Detective Montgomery did not interview "Nadine" or mention her in his Affidavit of Probable Cause.

not be able to provide clarifying information due to young age, age appropriate developmental limitation and speech articulation challenges." It indicated that A.B. had a below normal developmental level for his age, namely "challenges with speech articulation." In a section entitled "FORENSIC ISSUES Truth and Lie/Real or Pretend," Alliance wrote that A.B. had been "[i]nconsistent in demonstration." The report also stated that A.B. "[m]ay be unable to clearly disclose abuse Due to his young age, age appropriate developmental limitations and speech articulation challenges."

Detective Montgomery prepared an affidavit of probable cause in support of an application for an arrest warrant for Burton. It stated that A.B.'s treating physician notified DHS of two burn injuries on A.B.'s body which were "in a healing stage and consistent with being caused by a cigar." It added that the physician told DHS that A.B. had identified Burton as the source of these injuries. The affidavit also described the interview of A.B. conducted by Alliance, during which A.B. had stated that Burton burned various parts of his body. Finally, the affidavit declared that A.B.'s medical records had been obtained from the treating physician pursuant to a search warrant.

An assistant district attorney in the District Attorney's Charging Unit subsequently reviewed the arrest

-4-

warrant application.  After the assistant district attorney approved the affidavit and charges[2], Detective Montgomery submitted those documents to the arraignment court magistrate. The arraignment court magistrate issued the arrest warrant.

Burton was subsequently arrested and incarcerated for approximately four months at the Riverside Correctional Facility.  In December 2014, the Philadelphia Court of Common Pleas dismissed the charges against Burton after finding that A.B. was not competent to testify against her.

II.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant. See id. at 252.  "The mere existence of a scintilla of evidence in

---

2.  The charges were one count each of aggravated assault, endangering the welfare of a child, possible instrument of a crime, simple assault, and recklessly endangering another person.

support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  Id.

When ruling on a motion for summary judgment, we may only rely on admissible evidence.  See, e.g., Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 94-95 (3d Cir. 1999).  We view the facts and draw all inferences in favor of the nonmoving party.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).  However, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment."  Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

### III.

Burton alleges, under 42 U.S.C. § 1983, that Detective Montgomery subjected her to malicious prosecution in violation of the Fourth Amendment of the United States Constitution[3] as incorporated by the due process clause of the Fourteenth

---

3. The Fourth Amendment provides:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.

Amendment.  "To recover under 42 U.S.C. § 1983, [the plaintiff] must establish that a state actor engaged in conduct that deprived [her] of 'rights, privileges, or immunities' secured by the constitution or laws of the United States."  See Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000) (quoting Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)).

Detective Montgomery raises the defense of qualified immunity.  Under the doctrine of qualified immunity, government officials are shielded "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  See Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'"  See Anderson v. Creighton, 483 U.S. 635, 638 (1987).

The qualified immunity doctrine requires a two-step analysis.  First, we must determine "whether the facts that a plaintiff has . . . shown . . . make out a violation of a constitutional right."  See Pearson, 555 U.S. at 232.  Second, we must decide whether the constitutional right at issue was "clearly established" at the time of the alleged misconduct.  Id.  Unless the answer to both questions is "yes," the official is entitled to qualified immunity.  See id.  Courts are

"permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 236.

Here, our analysis begins with the first prong. "We arrange the facts in the light most favorable to the plaintiff, and then determine whether, given precedent, those 'facts,' if true, would constitute a deprivation of a right." Wilson, 212 F.3d at 786. Our Court of Appeals has stated:

> [t]o prevail in a Section 1983 action malicious prosecution action, a plaintiff must show:
>
> (1) the defendant[ ] initiated a criminal proceeding;
>
> (2) the criminal proceeding ended in the plaintiff's favor;
>
> (3) the proceeding was initiated without probable cause;
>
> (4) the defendant[ ] acted maliciously or for a purpose other than bringing the plaintiff to justice; and
>
> (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)).

Burton was incarcerated for approximately four months and can therefore make out the fifth element because she suffered a deprivation of her liberty. With regard to the second element, we note that the criminal proceeding was dismissed by the Court of Common Pleas because A.B. was not competent to testify against Burton. We consider such a dismissal as a resolution of the proceeding "in the plaintiff's favor."

We now turn to the third and fourth elements, that is whether the proceeding was initiated without probable cause and whether Detective Montgomery "acted maliciously or for a purpose other than bringing the plaintiff to justice." See DiBella, 407 F.3d at 601. Burton relies on a case from the Court of Appeals for the Sixth Circuit for the proposition that proving malice is equivalent to showing the absence of probable cause. See Sykes v. Anderson, 625 F.3d 294, 310 (6th Cir. 2010). There, the Sixth Circuit "conclude[d] that malice is not an element of a § 1983 malicious prosecution." See id. However, that case is inapposite. Our Court of Appeals has time and again stated that to prove a claim of malicious prosecution, "a plaintiff must show . . . the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice" in addition to proving the absence of probable cause. See Black v. Montgomery

Cty., \_\_\_\_ F.3d \_\_\_\_, 2016 WL 4525230, at *4 (3d Cir. Aug. 30, 2016).

There is no evidence to show that Detective Montgomery acted maliciously.  A physician reported and his medical records confirmed that he had seen burn injuries on A.B., a three-year old boy, and that the boy stated that his mother had burned him.  The boy repeated this statement later during an interview at the Philadelphia Children's Alliance.  Detective Montgomery cannot be said to have acted maliciously against Burton under these circumstances.

Furthermore, Burton cannot establish that probable cause was lacking.  "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) (quoting Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995)).  "Probable cause requires more than mere suspicion, however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt."  Orsatti, 71 F.3d at 482.  "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment."  See Hill v. California, 401 U.S. 797, 804 (1971).

"Although the question of probable cause is generally a question for the jury, a district court may conclude on summary judgment 'that probable cause exists as a matter of law if the evidence, when viewed in the light most favorable to the plaintiff, reasonably would not support a contrary factual finding.'" Minatee v. Philadelphia Police Dep't, 502 F. App'x 225, 228 (3d Cir. 2012) (quoting Merkle, 211 F.3d at 788-789). In this regard, "it is irrelevant to the probable cause analysis what crime a suspect is eventually charged with . . . or whether a person is later acquitted of the crime for which she or he was arrested." See Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005).

The affidavit submitted by Detective Montgomery to the arraignment court magistrate as part of the arrest warrant application undisputedly established probable cause to arrest Burton. It noted that A.B.'s treating physician had identified burn injuries on A.B.'s back and arm, which A.B. said were caused by Burton. It also stated that A.B. told Alliance interviewers that his mother had burned several parts of his body. The affidavit further explained that A.B's medical records, which had been obtained from the treating physician pursuant to a search warrant, documented A.B.'s injuries and his statement to the physician that Burton had caused those injuries.

We acknowledge that Detective Montgomery relied substantially upon statements made by A.B., a three-year old child, in applying for the arrest warrant. Nonetheless, as noted above, A.B. stated on at least two separate occasions that Burton had burned him. Those statements were corroborated during Detective Montgomery's investigation, which included the Alliance interview of A.B. He had reviewed A.B.'s medical records and had the benefit of the reporting physician's written and oral statements about the burn injuries on A.B.'s left arm and back.

Although A.B. provided varying pieces of information to the physician and to Alliance, that variation does not undermine probable cause. Burton cites United States v. Frazier, 678 F. Supp. 499 (E.D. Pa. 1986), in arguing that A.B.'s statements were unreliable. In Frazier, the court upheld the admissibility of out-of-court declarations by a three-year old victim of sexual assault even though those accounts "contained variations and discrepancies," because each account conveyed that the child had sustained a sexual assault of some type and the physicians who examined and spoke with the child confirmed that a sexual assault had taken place. See Frazier, 678 F. Supp. at 502. Here, although A.B.'s statements to his physician and Alliance contained varying information, each statement clearly provided that Burton had burned A.B. Those

statements were corroborated by the burn injuries discovered by the physician and by Detective Montgomery's own observation of the injuries. It goes without saying that probable cause is a lesser standard than proof beyond a reasonable doubt.

Moreover, Burton argues that no probable cause exists because the investigation of A.B.'s injuries was inadequate. We disagree. At the time that he submitted the affidavit of probable cause, Detective Montgomery had sufficient knowledge of the facts and circumstances "to warrant a reasonable person to believe that an offense ha[d] been committed by the person to be arrested." See Orsatti, 71 F.3d at 484. He "had no further constitutional duty to continue [his] investigation in an attempt to unearth potentially exculpatory evidence undermining the probable cause determination." See Lincoln v. Hanshaw, 375 F. App'x 185, 190 (3d Cir. 2010) (citing Baker v. McCollan, 443 U.S. 137, 145-46 (1979)). In particular, Detective Montgomery was under no obligation to locate and interview "Nadine," the witness identified by A.B. during his Alliance interview.

Finally, we must emphasize that the arrest of Burton was the result of an arrest warrant. Detective Montgomery's application for the arrest warrant of Burton was approved by an assistant district attorney and was thereafter approved by an arraignment court magistrate.

-14-

Even viewing the facts in the light most favorable to Burton, there is no evidence to establish that Detective Montgomery violated her constitutional right to be free of malicious prosecution. Thus, we have no need to inquire as to whether that constitutional right was clearly established. No reasonable fact finder could return a verdict for Burton. Accordingly, we will grant the motion of Philadelphia Police Detective Justin Montgomery for summary judgment and enter judgment in his favor.